Joe Angelo (Bar #268542)
jangelo@gajplaw.com
Gale, Angelo, Johnson, & Pruett, P.C.
1430 Blue Oaks Blvd., Ste. 250
Roseville, CA 95747
916-290-7778 ph
916-721-2767 fax

Attorneys for Plaintiff
Giovanie Verdugo

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIOVANIE VERDUGO, <br><br> Plaintiff, <br><br> v. <br><br> TRANSUNION, LLC; CAPITAL ONE BANK USA, N.A. <br><br> Defendants. | CASE NO. **'23CV0114 CAB AHG** <br><br> COMPLAINT FOR DAMAGES: <br><br> 1. Violation of Fair Credit Reporting Act; <br> 2. Violation of California Consumer Credit Reporting Agencies Act |

COMES NOW Plaintiff Giovanie Verdugo (hereinafter "Plaintiff"), an individual, based on information and belief, to allege as follows:

## INTRODUCTION

1. This case arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), 15 U.S.C. § 1681e(b), 15 U.S.C. § 1681i(a)(2)(A)), 15 U.S.C. § 1681i(a)(4)), 15 U.S.C. § 1681i(a)(5)(A)) and the California Consumer Credit Reporting Agencies Act, California Civil Code §1785.25(a),

2. Plaintiff seeks redress for the unlawful and deceptive practices committed by the Defendants in connection with their inaccurate, misleading, or

incomplete reporting of Plaintiff's alleged account with Capital One Bank USA, N.A. (hereinafter "COB").

3. Here, COB continues to report Plaintiff as an authorized user on a derogatory account where Plaintiff is not in fact an authorized user after Plaintiff disputed this account with TransUnion.

4. Instead of removing the derogatory account entirely from Plaintiff's credit report COB continues to report the account delinquent and Plaintiff an authorized user on the account to TransUnion.

5. TransUnion's report reflects an adverse account that should not appear on Plaintiff's credit report whatsoever. The COB tradeline makes it appear that Plaintiff is liable for the past-due balance. The negative payment history also impacts Plaintiff's credit. Such reporting is wholly inaccurate, misleading, and adversely impacts Plaintiff's credit worthiness.

6. The COB tradeline at issue has been disseminated to various third parties.

7. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

8. Creditors know that by deviating from recognized credit reporting standards consumers will have difficulty raising their credit scores and improving their credit worthiness.

## JURISDICTION & VENUE

9. Plaintiff re-alleges and incorporates herein by this reference the allegations in each and every paragraph above, fully set forth herein.

10. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1367, and 15 U.S.C. § 1681

11. This venue is proper pursuant to 28 U.S.C. §1391(b)(1).

## GENERAL ALLEGATIONS

12. Plaintiff alleges that each and every Defendant is familiar with credit reporting industry standards and subscribes thereto.

13. Plaintiff alleges that each and every Defendant understands that deviation from credit reporting industry standards can and often does result in denial of credit, higher interest rates, and prompts those making credit decisions to draw a more negative inference from the reported data than if the Defendant reported in accordance with the recognized industry standard.

14. Plaintiff alleges that all actions alleged herein by Defendants were done knowingly, intentionally, and in reckless disregard for credit reporting industry standards in an attempt to purposefully undermine Plaintiff's attempt to improve his FICO Score.

15. In the alternative Plaintiff alleges that each and every Defendant's actions was the result of reckless policies and procedures that inevitably led to inaccurate, misleading, or incomplete credit reporting.

### FICO, Inc.

16. FICO is a leading analytics software company with its principal headquarters located in San Jose California. FICO has over 130 patents related to their analytics and decision management technology, and regularly uses mathematical algorithms to predict consumer behavior including credit risk.

17. The FICO Score has become the standard measure of consumer credit risk in the United States and is used in ninety percent of lending decisions.

18. A FICO score consists of a three-digit number summarizing a consumer's credit risk or likelihood to repay a loan. FICO periodically updates its scoring models resulting in multiple FICO Score versions.

19. Base FICO Scores range from 300 to 850, while industry-specific FICO Scores range from 250-900.  A higher FICO Score demonstrates lower credit risk or less likelihood of default.

20. Different lenders use different versions of FICO Scores when evaluating a consumer's credit worthiness.

21. There are 28 FICO Scores that are commonly used by lenders.

22. A consumer's FICO Score is calculated based solely on information in consumer credit reports maintained at credit reporting agencies (CRAs).

23. The three largest CRAs are Experian Information Solutions, Inc.; Equifax, Inc. and Transunion, LLC.

24. FICO does not control what information is provided on a consumer's credit report. Instead, the scoring models or algorithms are based on the premise that information provided by the CRAs is accurate and complies with credit reporting industry standards.

25. There are five key factors that a FICO Score considers: 1) Payment History 2) Amount of Debt 3) Length of Credit History 4) New Credit and 5) Credit Mix.

26. Each of the five factors is weighted differently by FICO.

27. 35% of a consumer's FICO Score relates to payment history, 30% relates to the amount of debt, 15% relates to the length of credit history, 10% relates to new credit, and the last 10% relates to a consumer's credit mix or the different types of debts reported.

28. Payment history refers to whether a consumer has paid their bills in the past, on time, late or missed payments.  The more severe, recent, and frequent the late payment information, the greater the impact on a FICO Score.  Public record items such as bankruptcy, foreclosure, judgments,

and wage garnishments are also considered part of a consumer's payment history.

29. In factoring the severity of delinquent payments a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist.

30. Once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.

31. FICO Scores are entirely dependent upon information provided by data furnishers (DFs) to CRAs.

32. A consumer's FICO score is negatively impacted when an adverse authorized user account is reported making the consumer a higher credit risk.

**Metro 2**

33. The Consumer Data Industry Association is an international trade association representing the consumer credit, mortgage reporting, employment and tenant screening and collection service industries.

34. The credit reporting industry has adopted a standard electronic data reporting format called the Metro 2 format. The Metro 2 format was developed by the CDIA in an effort to universally report debts in a particular manner that is understood to be the most accurate way in which to report a debt. Specifically, Metro 2 format was designed to allow reporting of the most accurate and complete information on consumer's credit history.

35. The CDIA's Metro 2 format is the credit reporting industry standard for accurate credit reporting.

36. The credit reporting industry at large depends upon Metro 2 and the CDIA's recommendations for reporting debt accurately.

37. The CDIA is *the* expert on accurate credit reporting. In support of this allegation Plaintiff avers the following:
    a. The CDIA offers a FCRA certificate program for all CRAs.
    b. The CDIA offers a FCRA awareness program for all CRAs.
    c. The CDIA offers a FCRA Certificate program for DFs.
    d. The CDIA offers a FCRA awareness program for DFs.
    e. The CDIA offers a Metro 2 Learning system to provide detailed instructions on the use of Metro 2 format to ensure understanding of the reporting guidelines for each field of the Metro 2 Format as well as the relationship between multiple fields.
    f. The CDIA hosts workshops developed and authorized by Equifax, Experian, Innovis, and Transunion.
    g. The CDIA developed a credit reporting resource guide for accurately reporting credit.
38. The CDIA's Metro 2 is accepted by all CRAs.
39. The credit reporting accepted industry standards for reporting Metro 2 accurately are found in the CDIA's credit reporting resource guide (CRRG).
40. The CRRG outlines the industry standards for most accurately reporting debts using Metro 2.
41. The three main credit bureaus helped draft the CRRG.
42. The CRRG is not readily available to the public. It can be purchased online for $229.45.
43. Even if a buyer is ready willing and able to pay for the CRRG, the CDIA will NOT grant access to the guide unless the buyer represents an organization included in the Metro 2 Access Policy.

44. When FICO calculates credit scores the algorithms use Metro 2 information based on industry standards established by the CDIA.
45. The algorithms used by FICO in determining a consumer's credit score are premised on the Metro 2 data received comporting with the CDIA's recommendations for accurate credit reporting.
46. If the Metro 2 data received by FICO deviates from industry standards an inaccurate or incorrect FICO Score results. If the resulting FICO Score is lower a consumer will be considered a higher credit risk resulting in less favorable lending terms.

### e-OSCAR

47. E-OSCAR is the web based Metro 2 compliant system developed by Experian Information Solutions, Inc.; Equifax, Inc.; TransUnion, LLC and Innovis that enables DFs and CRAs to create and respond to consumer credit disputes.
48. When a consumer sends a dispute letter to a CRA the CRA then sends an automated credit dispute verification (ACDV) via e-Oscar to the DF.
49. The ACDV contains within it Metro 2 codes next to certain data fields associated with a credit file e.g. "Account Type" "07" (07 in Metro 2 refers to a Charge Account).

### Plaintiffs Dispute

50. On May 19, 2022 Plaintiff ordered credit reports from Experian, TransUnion, and Equifax to ensure proper reporting by Plaintiff's creditors.
51. Plaintiff noticed a delinquent and adverse trade line on his May 19, 2022 credit report where he was listed as an authorized user on an adverse COB account.
52. The adverse COB tradeline was reporting the account as charged-off with a balance owed.

53. Plaintiff did not recognize this account and was not aware of any application or request to add him as an authorized user.
54. In response, Plaintiff disputed the COB trade line via certified mail with Experian, Equifax, and TransUnion.
55. Plaintiff's dispute letter specifically put defendant COB on notice that he was not an authorized user on the COB account and to the extent Plaintiff was ever an authorized user on the account he was revoking his authorized user status on the COB account and that he would like his name removed as an authorized user and the account deleted from his credit report.
56. Plaintiff also requested that his dispute letter be forwarded to COB in order for the account to be updated and removed from his credit report.
57. To the extent Plaintiff was not an authorized user on the COB account, Plaintiff's prior chapter 7 would have discharged any obligation to COB.
58. Plaintiff's dispute letter also made clear that given Plaintiff's dispute letter the Bureaus had first-hand knowledge that Plaintiff was no longer in fact an authorized user on the account and should delete the account or otherwise remove it from his credit report.
59. Plaintiff is informed and believes that each CRA received Plaintiff's dispute letter and in response sent Plaintiff's dispute to each DF via an ACDV through e-OSCAR.
60. A second dispute was sent to TransUnion on October 17, 2022 again disputing the COB account.
61. On December 13, 2022 after the statutory time period had elapsed for Plaintiff to receive a reinvestigation report from the credit Bureaus, Plaintiff ordered a third credit report for the sole purpose to ensure Plaintiff's account with COB had in fact been updated

**Inaccuracy – COB**

62. Plaintiff was frustrated to see that Defendant COB did not properly update the account.
63. Instead, COB continued to report that Plaintiff an authorized user on an adverse account despite Plaintiff factually not being an authorized user on the account.
64. COB's reporting is harming Plaintiff's credit score as the tradeline at issue indicates that the account is charged-off – implying that Plaintiff is a credit risk and still liable for the balance.
65. To the extent that Plaintiff is not an authorized user, Plaintiff's chapter 7 bankruptcy discharge would have extinguished any obligation had on the CNBA account, including discharging the reported outstanding balance and past-due balance.
66. The COB reporting is incredible detrimental to Plaintiff's credit score as COB's tradeline is reporting a balance, past-due balance, charge-off notation, and that the account currently exceeds the maximum allowed credit – where it appears that Plaintiff's credit utilization regarding the COB account is 110%.
67. The COB tradeline also indicates that Plaintiff is 120-days past due.
68. The reporting was updated by COB as recently as October of 2022.

**Willfulness**

69. This was not a negligent act by Defendant COB but instead an intentional act to purposefully undermine Plaintiff's ability to effectively restore Plaintiff's credit.
70. COB's reporting makes Plaintiff appear less credit worthy because the delinquent payments of the actual cardholder are impacting Plaintiff's credit report.

71. COB's reporting, and updates made in October of 2022, are an attempt for COB to have Plaintiff make a payment on the account in order to remove the adverse reporting information.
72. Rather than properly deleting the account from Plaintiff's credit reports, COB continued to report credit mistakes negatively impacting Plaintiff's credit worthiness and score.
73. COB's reporting indicates that Plaintiff is liable for the balance and that COB can collect from Plaintiff.
74. Such a scheme directly undermines the integrity of the credit reporting system at large.

### Damages

75. As a result of the incorrect reporting, Plaintiff has suffered economic loss, diminished credit, and emotional harm.
76. Various third parties have reviewed Plaintiff's credit report.
77. Plaintiff credit score is lower than it otherwise would be if COB were not reporting the tradeline at issue, making it difficult for Plaintiff to rebuild his credit
78. The actions of TransUnion and COB as alleged herein are acts in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b).

### FIRST CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681e(b))
Against Defendant TransUnion)

**TransUnion, LLC– Failure to Assure Credit Reporting Accuracy.**

79. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.
80. TransUnion violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the

preparation of Plaintiff's credit reports and credit files it published and maintained concerning Plaintiff.

81. Had TransUnion maintained reasonable procedures to assure maximum accuracy Equifax would never have allowed Defendant COB to report the account as described herein. Instead, the account at issue would simply been removed from Plaintiff's credit report.

82. As a result of TransUnion's violation of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: diminished credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

**Willfulness**

83. The violations described herein by TransUnion were willful, specifically the TransUnion has intentionally and purposefully set up a system where inaccuracies are not only probable but inevitable.

84. In 2012 the FTC reported that 1 in 5 consumer credit reports contains a material error.

85. Such a finding should shock the conscience.

86. When those errors are disputed TransUnion intentionally send consumer disputes to employees who do not live within the continental United States.

87. This is intentionally done to hide and or subvert a consumer's ability to confront individual directly responsible for approving accurate reporting.

88. Such a policy also inevitably leads to disputed going unresolved as these employees for Defendant TransUnion receive little to know training concerning how to accurately report consumer debt.

89. Instead, these employees are simply instructed to parrot whatever information a data furnisher provides regardless of whether that information is accurate. *See Saez v. Trans Union,* LLC, 621 F.Supp. 2d 1074, 1083, 1088

(D.Or. 2007); *Grigoryan v. Experian Info. Sols.*, Inc., 84 F. Supp. 3d 1044, 1091 (C.D. Cal. 2014); *Haykuhi Avetisyan v. Experian Info Sols.*, No. CV 14-05276-AB (ASX)

90. TransUnion employees are regularly expected to review and approve over 90 disputes per day rendering less than five minutes to review, investigate, and respond to each dispute received.

91. TransUnion has intentionally setup this system in order to undermine, hide, and otherwise frustrate consumers' ability to properly dispute and correct credit reports.

92. TransUnion also allowed COB to report its account with inaccurate information despite specifically being told in the dispute letter why the information COB was reporting was incorrect.

93. TransUnion knew plaintiff was not an authorized user yet did not delete the account from Plaintiff's credit reports after receiving Plaintiff's dispute letter.

94. Given that TransUnion helped draft the CRRG, and Plaintiff specifically referenced industry guidelines in the dispute letter TransUnion knew that these accounts were not reporting in a manner consistent with industry standards i.e. accurate, but chose to do nothing.

95. Consequently, Defendant TransUnion is liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n. In the alternative Equifax was at least negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

96. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from TransUnion in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

# SECOND CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681s-2(b))
Against Defendant TransUnion and COB)

**COB – Failure to Reinvestigate.**

97. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

98. 15 USC 1681s-2(b) and 15 USC 1681i-(a)1 prohibits furnishers from providing any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate or misleading and requires a furnisher to update and or correct inaccurate information after being notified by a consumer reporting agency of a dispute by a consumer.

99. Defendant COB violated section 1681s-2(b) by failing to conduct a reasonable investigation and re-reporting misleading and inaccurate account information.

100. The CRAs provided notice to COB that Plaintiff was disputing the inaccurate and misleading information but COB failed to conduct a reasonable investigation of the information as required by the COB.

101. Based on Plaintiff's dispute, COB should have known that to the extent Plaintiff was ever an authorized user on the account Plaintiff was no longer an authorized user and the account should have been removed from Plaintiff's credit report.

102. The most basic investigation would simply involve reading Plaintiff's dispute and unequivocally seeing that Plaintiff was no longer an authorized user on the account.

103. To the extent Plaintiff was not an authorized user, COB was listed as a creditor in Plaintiff's chapter 7 bankruptcy filing and was aware of the subsequent discharge that was entered in Plaintiff's bankruptcy proceeding.
104. Plaintiff's discharge would have eliminated Plaintiff's liability to COB for any balance owed on the account.
105. Plaintiff alleges COB did not review well established industry standards for credit reporting.
106. If COB had reviewed such standards COB would have seen its reporting was not in compliance and consequently inaccurate and or incomplete.
107. The lack of investigation is unreasonable.
108. Plaintiff further alleges that COB has not properly trained those directly investigating disputes on Metro 2 generally or credit reporting industry standards and as such have developed reckless policies and procedures.

**TransUnion – Failure to Reinvestigate Disputed Information.**

109. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.
110. After Plaintiff disputed the accounts mentioned above, TransUnion was required to conduct a reasonable investigation and to delete any information that was not accurate under 15 USC 1681i-(a)1.
111. TransUnion failed to conduct a reasonable investigation and failed to correct the misleading and or inaccurate statements on the account within the statutory time frame or at all.
112. Plaintiff alleges that TransUnion has its own independent duty to conduct a reasonable investigation 15 USC 1681i-(a)1.
113. TransUnion is not a passive entity bound to report whatever information a DF provides.

114. Plaintiff alleges that TransUnion is readily familiar with Metro 2 guidelines and credit reporting industry standards given that Equifax helped draft said guidelines.
115. Given the aforementioned, Plaintiff alleges that TransUnion can and does suppress inaccurate information from being reported when DFs provide inaccurate information.
116. TransUnion can and does instruct DFs on how to properly report certain accounts from time to time upon request from the DF.
117. TransUnion failed to conduct a reasonable investigation because any basic investigation would have included a review of Plaintiff's dispute letter which unequivocally asserted Plaintiff's desire to no longer be an authorized user and to remove the account from Plaintiff's credit file.
118. TransUnion would have known that Plaintiff revoked his authorized user status based on the explicit information in his dispute letter.
119. TransUnion therefore did not do the most basic investigation regarding credit reporting industry standards otherwise the aforementioned would have been uncovered.
120. TransUnion intentionally, willfully or with reckless disregard for Plaintiff's accuracy did no investigation whatsoever given that TransUnion general policy is to simply parrot whatever information a data furnisher sends.
121. Such policy and procedure inherently leads to inaccurate information being reported and therefore such an investigation is wholly unreasonably and reckless i.e. willful.

### THIRD CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(4))
Against Defendant TransUnion)

**TransUnion – Failure to Review and Consider All Relevant Information.**

122. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

123. TransUnion violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

124. As a result of TransUnion's violation of 15 U.S.C. § 1681i(a)(4), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

125. The violations by TransUnion were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

126. In the alternative, TransUnion was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

127. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from TransUnion in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

### FOURTH CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(5)(A))
Against Defendant TransUnion)

**TransUnion – Failure to Delete Disputed and Inaccurate Information.**

128. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

129. TransUnion violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.

130. As a result of TransUnion's violation of 15 U.S.C. § 1681i(a)(5)(A), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

131. The violations by TransUnion were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

132. In the alternative, TransUnion was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

133. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from TransUnion in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## FIFTH CAUSE OF ACTION
(Violation of California Consumer Credit Reporting Agencies Act California Civil Code § 1785.25(a) Against Defendant COB)

**COB – Reporting Inaccurate Information to CRAs.**

134. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

135. In the regular course of its business operations, COB routinely furnishes information to credit reporting agencies pertaining to transactions between Defendants and Defendant's consumers, so as to provide information to a consumer's credit worthiness, credit standing and credit capacity.

136. COB intentionally and knowingly reported misleading and inaccurate account information to the CRAs that did not follow with well-established industry standards.

137. Plaintiff alleges that COB re-reported the information contained herein in violation of California Civil Code § 1785.25(a).

138. Plaintiff also alleges that COB all had reason to know that the information reported on Plaintiff's account was misleading, inaccurate, and incomplete.
139. Plaintiff alleges that COB all had reason to know that by not complying with well-established industry standards lenders will draw a more negative inference with respect to Plaintiff's credit worthiness.
140. Plaintiff alleges that the dispute letters from all three credit reporting agencies, the consumer data industry resource guide, and results of its investigation should have provided notice to COB of its misleading and inaccurate reporting.
141. COB failed to notify Experian, TransUnion, and Equifax that the information Defendant COB re-reported was inaccurate before the end of 30 business days, in violation of California Civil Code § 1785.25(a).
142. COB's communications of false information, and repeated failures to investigate, and correct its inaccurate information and erroneous reporting were done knowingly, intentionally, and in reckless disregard for their duties and Plaintiff's rights.
143. As a direct and proximate result of COB's willful and untrue communications, Plaintiff has suffered actual damages including but not limited to reviewing credit reports from all three consumer reporting agencies, time reviewing reports with counsel, sending demand letters, diminished credit score, denial of credit, and such further expenses in an amount to be determined at trial.
144. Plaintiff has further suffered, and will continue to suffer, financial harm due to the denial of various home loan applications cased by COB's inaccurate reporting and transmission of false account information to Experian, Equifax, and TransUnion.

**<u>DEMAND FOR JURY TRIAL</u>**

Pursuant to Federal Rules of Civil Procedure 38, Plaintiff hereby demands a trial by jury for all issues triable by jury.

Wherefore, Plaintiff prays for judgment as hereinafter set forth.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

1. For preliminary and permanent injunctive relief to stop Defendants from engaging in the conduct described above;
2. Award statutory and actual damages pursuant to 15 U.S.C. § 1681n;
3. Award punitive damages in order to deter further unlawful conduct pursuant to 15 U.S.C. § 1681n;
4. Award attorney's fees and costs of suit incurred herein pursuant to 15 U.S.C. § 1681n & o;
5. For determination by the Court that Creditor's policies and practices are unlawful and in willful violation of 15 U.S.C. § 1681n, et seq.; and
6. For determination by the Court that Creditor's policies and practices are unlawful and in negligent violation of 15 U.S.C. § 1681o.

Gale, Angelo, Johnson, & Pruett, P.C.

Dated:   January 23, 2023    */s/ Joe Angelo*
Joe Angelo
Attorney for Plaintiff